49

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ROLAND PERRY LOTT,
    Plaintiff,

v.

WAYNE SCOTT, EXECUTIVE DIRECTOR
TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, INSTITUTIONAL DIVISION,
ET AL & DAVID FORREST, SENIOR
WARDEN, WILLACY STATE JAIL

§
§
§
§
§
§
§
§
§
§

Civil Action No. B-00-010

United States District Court
Southern District of Texas
FILED
AUG 1 3 2001
Michael N. Milby
Clerk of Court

## PLAINTIFF LOTT's ADVISORY TO THE COURT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, Roland Lott, Inmate, Texas Department of Criminal Justice, Plaintiff, and files this his additional Advisory to the Court.

## I.
## WHAT I KNOW

Texas is one of the few states in which prisoners are paid nothing for their labor. Between 7-8,000 Texas prisoners work in textiles, agriculture, manufacturing furniture, laundries, making license plates and repairing computers. The Textile industry is the largest in Texas prisons, and it provides the clothing and bedding for the system. The principal purpose of labor in Texas prisons is therefore to save the state and taxpayers money by producing goods to sustain the system. This makes taxpayers highly supportive of prison labor and likely opposed to the implementation of a wage.

Texas Correctional Industries neither deals with private companies nor participates in the Federal "Prison Industry Enhancement Program" which would mandate a federal minimum wage for prisoners.

If prisoners refuse to work, they are confined to their cells. Prison authorities call this a choice; but, it is forced labor. So-called "Good-time" credit (sentence reduction) is given to prisoners with "satisfactory" work performance. This vests enormous power in supervisors (prison employees) to determine what satisfactory is.

for example not making a quota. The length of sentences is a power supposedly residing in U.S. Courts and laws, not prison guards or administrators. Once revoked (for disciplinary actions including filing what the Courts decide is a frivolous or malicious lawsuit!)

## II.
## WHAT SHOULD BE KNOWN

Does Texas use prisoner labor to do business with private companies -- selling the products they make -- and if so, what companies? Why does Texas Prisons take away work-time when inmates aren't paid to begin with - which is their compensation? Why are prisoners in solitary confinement or otherwise confined to their cells who cannot work are therefore ineligible to get good-time credit? Why is the relationship between good-time and labor further evidence that labor in Texas prisons is forced?

## III.
## WHAT ISN'T KNOWN

The thirteenth amendment to the United States Constitution, is clearly being violated. American slavery remains an explicitly legal form of exploitation. American law clearly permits both slave and prison labor, a fact that is not relevant in mainstream debate because of the mandatory assumption of american democratic virtue. But to more than a million prisoners in america, who labor under slave conditions, this hypocriscy is the very heart of the matter.

In the state-run system prisoners don't have to be paid for their labor. If they work for private companies, they are required to be paid minimum wage. In either case, their "earnings" may be docked to cover "cost of incarceration, taxes, victim restitution funds and so on.

According to President Clinton's Secretary of Labor, Robert Reich, this should put the United States "outside the community of civilized nations." Writing about the question of trade sanctions over human rights cases, Reich said: Some labor practices simply place countries outside the community of civilized nations. A consensus list of 'core' labor standards will certainly proscribe goods produced by prison or slave labor. In such a system, where the labor of prisoners is a part of their oppression and a part of the profit-making system that dehumanizes them and everyone else, where they have no control over their labor or its products, and where they are

instruments of production to be used, then we must call prison labor what it is — slavery. I do not use this term in the rhetorical sense of "really bad exploitation," but in the specific sense of forced labor by captive workers, for the profit of others.

Of the 1.1 million prisoners in state and federal prisons, almost half a million (44.6%) were in prison work programs. Another 65,000 were in work release programs. Wages in government prison industries, if they are paid at all, are as low as 13¢ per day, in Louisiana. Several states — Arkansas, Georgia and Texas give prisoners no compensation at all.

In a supposedly free market, a system of forced labor supplying state-run industries with no competition looks a little awkward. So does prisoners who often engage in work that is deliberately non-productive. Such as breaking rocks for no reason is a good example of the motives of the prison system. The return of this practice, one which has similar symbology as slavery, is a testament to the ulterior motives. As an act of state power, Corrections is a synonym for "humiliation," a legislative echo of degradation.

A great proportion of prisoners had nothing before they went to prison, and they will have nothing when they leave, if they leave. The question for the state to work out, then, is what to do with them while they are behind bars.

Just like old slavery in the South, the question is less how long a slave will live, but how productive he or she will be as a worker while alive.

The Texas Penal Colony is one of the most expansive industries in the United States. However, while the populations have swelled to over capacity, the Texas Correctional Industries Programs have not kept in step. As a result, basic concepts of imprisonment in Texas remain unchanged from the prior plantations dictates that induced slavery. Inmate laborers in Texas are wholly uncompensated for their work. Conditions remain the same in spite of twenty years of formal litigation, offering inmate laborers little hope for the future.

Therefore those of us who remained confined within the Penal Colony are doomed to remain chained to the revolving door that has long become the accepted policy of incarceration in Texas. Legislators are happy to accept this concept of incarceration as it provides Texans with an ever growing

industry, which in turn Provides Texans with Jobs in Various areas of Corrections. This insane Policy must be stopped.

## II.

WHEREFORE, PREMISES CONSidered, the Plaintiff respectfully request this Court find that this satisfies the criteria and accept this Advisory Submitted in the matter of this case

Respectfully Submitted,

Roland P. Lott #707339
3C1-22 "Pro Se"
Polunsky Unit
12002 S. FM 350
Livingston, Texas
77351

# Certificate of Service

I, Roland Lott, Inmate, do hereby certify that a true and correct copy of the above and foregoing Plaintiff Lott's Advisory to the Court has been served by placing same in the United States mail, on the 8th day of August, 2001, addressed to:

Cari G. Bernstein
Attorney-in-charge
P.O. Box 12548
Capitol Station
Austin, Texas
78711

Roland P. Lott #707339
3CI-22  "Pro Se"
Polunsky Unit
12002 S. FM 350
Livingston, Texas
77351